COURT OF APPEALS









COURT
OF APPEALS

                                                    EIGHTH DISTRICT
OF TEXAS

                                                               EL
PASO, TEXAS

 

                                                                              )     

                                                                              )                         No.  08-01-00496-CV

IN RE:                                                                   )

                                                                              )                 AN ORIGINAL PROCEEDING

VERONICA MARIA
CALDERON-GARZA,      )     

                                                                              )                             IN MANDAMUS

Relator.                                                                  )

                                                                              )                 

 

OPINION
ON PETITION FOR WRIT OF MANDAMUS

This
original proceeding in mandamus poses significant issues concerning the effect
of the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) on
border communities.  It is common
practice for Mexican citizens to cross the international border in order to
give birth to their children in the United States.  The reasons they do so are varied and
diverse, but the reasons are of lesser importance than the consequences of the
decision.[1]  Veronica Maria Calderon-Garza, Relator, seeks a writ of mandamus compelling the trial
court to vacate its order, sustain her special appearance, decline jurisdiction
of this case, and dismiss the suit.  We
deny relief.

FACTUAL SUMMARY








Veronica
Maria Calderon-Garza met real party-in-interest, Medhi
Farshad Derambakhsh, in
Guadalajara, Mexico in 1997 where both were attending medical school.  She became pregnant in April 2000.  Calderon received all of her prenatal care in
Mexico.  On or about January 18, 2001,
Calderon traveled to El Paso, Texas, where her parents reside.  She relied on them for financial assistance
with the pregnancy.  A boy, Diego Andres
Calderon, was born in El Paso on January 27, 2001.  Calderon does not dispute that Derambakhsh is the father. 
He resides in Yonkers, New York and has never resided in Texas.  

Calderon
notified Derambakhsh of the birth on February 7.  He and his mother flew to El Paso on
February 9 to see the child.  He returned
to El Paso on March 22 and requested that Calderon sign a voluntary paternity
affidavit.  Calderon refused and asked Derambakhsh to help her pay some of her medical bills.  Derambakhsh
provided her with some post-dated checks to cover her expenses.  Calderon left El Paso on or about March 25
and returned to Mexico.  Derambakhsh filed an original petition for voluntary
paternity of a child on March 26.  When
he was unsuccessful in his attempts to serve Calderon at her parents= house and at her father=s medical office, he obtained an order
for substituted service.  Calderon filed
a special appearance, alleging that she was not amenable to process by a Texas
court and that Texas lacked subject matter jurisdiction.  An associate judge sustained the special
appearance and ordered that Derambakhsh=s original petition for voluntary
paternity of a child be dismissed with prejudice.  Derambakhsh
appealed to the referring court.  Following
a hearing on October 15, 2001,  the trial court made the following
pertinent findings:

Calderon=s
legal domicile is in Guadalajara, Jalisco, Mexico.

C                    
Grounds for personal jurisdiction provided in
Section 102.011(b) of the Texas Family Code had been established.[2]

 








C                    
The court had status and subject matter
jurisdiction over the suit.

C                    
Texas is the child=s
home state.

STANDARD OF REVIEW








Mandamus
will lie only to correct a clear abuse of discretion.  Walker v. Packer, 827 S.W.2d 833, 840
(Tex. 1992)(orig. proceeding).  Moreover, there must be no other adequate
remedy at law.  Id.  An appellate court rarely interferes with a
trial court's exercise of discretion.  A
clear abuse of discretion warranting correction by mandamus occurs when a court
issues a decision which is without basis or guiding principles of law.  See Johnson v. Fourth Court of Appeals,
700 S.W.2d 916, 917 (Tex. 1985)(orig.
proceeding).  With respect to resolution
of factual issues or matters committed to the trial court=s discretion, the reviewing court may
not substitute its judgment for that of the trial court.  Walker, 827 S.W.2d
at 839-40.  The relator must therefore establish that the trial court could
reasonably have reached only one decision. 
Id.  Even if the reviewing
court would have decided the issue differently, it cannot disturb the trial
court=s
decision unless it is shown to be arbitrary and unreasonable.  Id. 
With respect to a trial court=s
determination of the legal principles controlling its ruling, the standard is
much less deferential.  A trial court has
no Adiscretion@
in determining what the law is or applying the law to the facts.  A clear failure by the trial court to analyze
or apply the law correctly will constitute an abuse of discretion, and may
result in appellate reversal by extraordinary writ.  Walker, 827 S.W.2d
at 840.  A writ of mandamus is an
appropriate means to require a trial court to vacate a void order arising out
of an erroneous assertion of jurisdiction under the UCCJEA.  Geary v. Peavy, 878
S.W.2d 602, 604-05 (Tex. 1994)(mandamus appropriate
remedy to challenge jurisdiction under former UCCJA); In re Lambert, 993
S.W.2d 123, 127 (Tex.App.--San Antonio 1999, orig.
proceeding)(same).  Subject matter
jurisdiction is a question of law which we review de novo.  Mayhew v. Town of Sunnyvale, 964
S.W.2d 922, 928 (Tex. 1998), cert. denied, 526 U.S. 1144, 119 S.Ct. 2018, 143 L.Ed.2d 1030 (1999).

An
appellate court will deny mandamus relief if another remedy, usually appeal, is
available and adequate.  Street v. Second Court of Appeals, 715 S.W.2d
638, 639-40 (Tex. 1986)(orig. proceeding).  Mandamus will not issue where there is Aa clear and adequate remedy at law,
such as a normal appeal.@  Walker, 827 S.W.2d
at 840, quoting State v. Walker, 679 S.W.2d 484, 485 (Tex. 1984).  Mandamus is intended to be an extraordinary
remedy, available only in limited circumstances.  However, in jurisdictional disputes arising
from child custody proceedings, the relator need not
demonstrate the inadequacy of an appellate remedy.  Lambert, 993 S.W.2d
at 127; In re Jeffries, 979 S.W.2d 429, 433 (Tex.App.--Waco
1998, orig. proceeding).  A Achild custody proceeding@ includes a suit for paternity.  Tex.Fam.Code Ann. ' 152.102(4).

UNIFORM CHILD CUSTODY JURISDICTION AND ENFORCEMENT
ACT

Effective
September 1, 1999, Texas adopted the Uniform Child Custody Jurisdiction and
Enforcement Act (UCCJEA).  The provisions
of the UCCJEA have international application to child custody proceedings and
determinations of other countries; thus Mexico will be treated as if it were a
state of the United States for purposes of applying the Act.  Tex.Fam.Code
Ann. ' 152.105;
see Sampson & Tindall, Texas Family Code Annotated '152.105, Commissioners= Comment p. 472 (2001).  A Texas court has jurisdiction to make an
initial child custody determination only if Texas Ais
the home state of the child on the date of the commencement of
the proceeding . . . .@  [Emphasis added].  Tex.Fam.Code
Ann. '
152.201.  AHome
state@ is
defined as 

 








[T]he state in which
a child lived with a parent or a person acting as a parent for at least six
consecutive months immediately before the commencement of a child
custody proceeding.  In the case of a
child less than six months of age, the term means the state in which the child
lived from birth with a parent or a person acting as a parent.  A period of temporary absence of a parent or
a person acting as a parent is part of the period.  [Emphasis added].

 

Tex.Fam.Code Ann. '
152.102(7)(Vernon Supp. 2002).  Here, Calderon and the child left Texas the
day before Derambakhsh filed suit.  The issue before us focuses on the potential
conflict between Sections 152.201 (Texas may exercise jurisdiction only if it
is the home state Aon the
date of the commencement@
of the suit) and 152.102(7)(defining home state as the
state in which the child lived for at least six consecutive months Aimmediately before the
commencement@ of the
suit).

Statutory Construction








When
construing a statute, we must consider the statute as a whole rather than its
isolated provisions.  Helena
Chemical Co. v. Wilkins, 47 S.W.3d 486, 493 (Tex. 2001).  One provision should not be given meaning out
of harmony or inconsistent with other provisions.  Id. 
The well established rules of statutory construction require us to
presume that the entire statute is intended to be effective.  See Tex.Gov=t Code Ann. '
311.021 (2)(Vernon 1998).  Applying the rules here to the Act as a
whole, we presume that the first two sentences of Section 152.102(7) must be
read together such that in the case of a child less than six months of age, the
home state is that state in which the child lived from birth with a parent immediately
before the commencement of the child custody proceeding.  The language Aon
the date of the commencement@
of the child custody proceeding in Section 152.201 is used as a point of
reference from which to determine the child=s
home state according to the specific definition provided in Section
152.102(7).  And the specific definition
of Ahome state@  requires us to determine where the child
lived immediately before the commencement of the proceeding.  Consequently, in order to determine a child=s home state on a particular
date, we must ask where the child lived immediately before that
date.  When analyzed in this way, we
perceive no conflict between the two provisions. 

Home State Jurisdiction

Based
on this analysis, Texas was the child=s
home state when Derambakhsh filed his paternity
suit.  The child was born in El Paso,
Texas on January 27, 2001.  He lived here
with his mother from his birth until March 25, when he was taken to Mexico.  Derambakhsh
commenced the paternity suit on March 26. 
Although the child no longer lived in Texas on March 26--the date of
commencement of the paternity suit--he had resided in Texas for the entirety of
his life immediately before that date. 
Consequently, Texas was his home state for purposes of the UCCJEA.

Calderon
contends that she is legally domiciled in Mexico and that her visit to El Paso
was merely a Atemporary
absence@ from her
residence in Mexico.  She claims that she
did not actually Alive@ in Texas as the term is used in the
definition of Ahome
state@ under
Section 152.102(7).  She maintains that
the term Alived@ encompasses a long term, permanent
arrangement rather than a short term medical visit.  In support of her claim, Calderon produced
evidence that she is dual citizen of the United States and Mexico, votes in
Mexico, has a Mexican passport, and plans to permanently live and practice
medicine in Mexico.  She argues that she
came to El Paso only to give birth to the child and because she needed
financial assistance from her parents, but intended to return to Mexico
immediately.  As we have mentioned, her
situation is not an isolated one.








First,
even if Calderon deems herself temporarily absent from her domicile in Mexico,
the child cannot be considered temporarily absent because he was never
physically present in Mexico prior to March 26. 
The San Antonio Court of Appeals has determined that the temporary
absence provision of Section 152.102(7) cannot be construed to include periods
before the child was first present in the claimed home state.  See In re Lambert,
993 S.W.2d at 129; Grimes v. Grimes, 706 S.W.2d 340, 342 (Tex.App.--San Antonio 1986, writ dism=d).

Second,
even if Calderon herself had no intention of permanently residing in Texas, her
intention does not impact the determination of her child=s home state under the facts
presented.  The evidence showed that the
child was present in Texas with his mother from the day of his birth until
immediately before commencement of the paternity suit on March 26.  Regardless of how we define the word Alive,@
at the very least one must be physically present in a place to live there.  If the child cannot be said to have been
temporarily absent from Mexico, then Texas qualifies as his home state.  Because home state jurisdiction is prioritized
over jurisdiction predicated on significant connections, we do not address
Calderon=s obvious
connections to Mexico.

We
conclude that the trial court appropriately determined the law and applied it
to the facts; consequently, Relator has failed to
demonstrate an abuse of discretion. 
Accordingly, we deny relief.

 

 

June 27, 2002

                                                                         


ANN CRAWFORD McCLURE, Justice

 

Before Panel No. 4

Barajas, C.J., Larsen, and
McClure, JJ.

 

(Publish)











[1]  Calderon
advised the court that she wanted Mexican law to apply to any visitation Derambakhsh might have with their son.  





[2]  Section
102.011(a) provides that the trial court may exercise status or subject matter
jurisdiction over a nonresident pursuant to the UCCJEA.  Subsection (b) enumerates eight circumstances
in which the court may also exercise personal jurisdiction over a party in a
suit affecting the parent-child relationship. 
The trial court did not enumerate which of the grounds had been
established.  We note, however, that
Subsection (b)(4) authorizes personal jurisdiction if
the person resided with the child in this state.  See Tex.Fam.Code Ann. '102.011 (Vernon Supp. 2002).